**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**KEVIN R. HEWLATE**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

FILED
May 02 2013, 9:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

DYWAN MASTERSON,                     )
                                     )
    Appellant-Petitioner,            )
                                     )
        vs.                      )     No.  02A03-1208-PC-368
                                     )
STATE OF INDIANA,                    )
                                     )
    Appellee-Respondent.             )

APPEAL FROM THE ALLEN SUPERIOR COURT, CRIMINAL DIVISION FOUR
The Honorable Frances C. Gull, Judge
Cause No. 02D04-0901-PC-4

**May 2, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Here, appellant-petitioner Dywan Masterson was convicted of Unlawful Possession of a Firearm by a Serious Violent Felon,[1] a class B felony, and found to be a Habitual Offender.[2]  After Masterson's unsuccessful direct appeal, he filed a petition for post-conviction relief, alleging that he had been denied the effective assistance of trial and appellate counsel because trial counsel failed to object during voir dire to the prosecutor's questioning of the prospective jurors, and appellate counsel failed to challenge the prosecutor's questioning as fundamental error.  Concluding that Masterson has not demonstrated prejudice regarding his trial counsel's conduct during voir dire and that appellate attorney error cannot be predicated on conduct that was not error in the first instance, we affirm the judgment of the post-conviction court.

FACTS

On February 18, 2006, Fort Wayne Police Detective Delonzo Myles was conducting a sobriety checkpoint in a fully-marked police vehicle.  Detective Myles noticed a little black vehicle, resembling a Ford Mustang, speeding down the street and driving so erratically that other vehicles had to pull aside and stop.

Detective Myles followed the vehicle and confirmed that it was a Mustang, but when Detective Myles pulled behind the Mustang, it drove away at a high rate of speed. Ultimately, the Mustang crashed before Detective Myles could initiate a stop.

---

[1] Ind. Code § 35-47-4-5.

[2] Ind. Code § 35-50-2-8.

2

When Detective Myles approached the Mustang, there were no occupants inside; however, he observed a gun and three cell phones on the floor of the driver's side. Detective Myles also noticed a semi-automatic pistol on the floor of the passenger's side.

Officer Richard Jennings of the Fort Wayne Police Department K-9 Unit responded with his police dog, Chico, who picked up a scent and started tracking toward some nearby woods. Chico later returned carrying a tan Carhartt knit hat that was soft, indicating that it had not been on the ground for very long.

Eventually, Chico tracked a scent to a garage and indicated that there was a scent coming from the garage. Officer Jennings announced his and Chico's presence before permitting Chico to search the garage. When Chico began searching the garage, someone started yelling. Officer Jennings commanded the individual, who was later identified as Masterson, to exit the garage. Then, Officer Jennings sent Chico back into the garage where a second man, Ronald Holley, was located.

Officer Jennings noticed that Masterson was wearing tan Carhartt pants and asked Masterson if the Carhartt hat that Chico had found was his. Officer Jennings wanted to return the hat to Masterson "if it was his property . . ." because "[i]t was cold out there." Tr. p. 173, 175. Masterson responded that the hat belonged to him and that he did want it back, so Officer Jennings returned the hat. Masterson was in police custody at this time; however, he had not been advised of his Miranda[3] rights.

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

On February 26, 2006, Masterson was charged with class B felony unlawful possession of a firearm by a serious violent felon and alleged to be a habitual offender. Masterson's jury trial commenced on November 14, 2006. During voir dire, while discussing the concept of possession, the prosecutor gave the prospective jurors the following example:

> Let's say while you're sitting in here, let's hope it doesn't happen, somebody walks in wherever you parked your car, steals it. Takes off with it. They're now in possession of your car, correct?

Tr. p. 42.

> Later, the prosecutor again gave an example using a stolen car:

> I think the gentleman who I used as an example, or maybe it was you sir. About the car being stolen. The person that would steal his car would be in possession of his car, correct, he would be the owner.

Id. at 77.

> The prosecutor also illustrated that possession does not necessarily include holding something or having something on your person:

> Possession doesn't always have to mean that you're holding something in the palm of your hand. Some of you may have left something back in one of those seats when you got up here this morning. Maybe you wore a jacket and left it back on that seat. Sir, would you agree if you just left your jacket there, it's still in your possession and in your control, correct?

Id. at 44.

During Officer Jennings's testimony, Masterson objected when the officer was asked what he did with the Carhartt hat that Chico had found. The trial court overruled

4

the objection, and Officer Jennings testified that he had given the hat to Masterson after Masterson confirmed that the hat belonged to him.

The jury found Masterson guilty as charged. The trial court held a sentencing hearing on December 14, 2006, during which it sentenced Masterson to fifteen years of incarceration for the class B felony and thirty years for being a habitual offender, for a total executed term of forty-five years.

Masterson appealed the conviction, arguing that the trial court had improperly admitted into evidence his statement to the police concerning the ownership of the hat. Masterson v. State, No. 02A03-0703-CR-00132, memo op. at 5, (Ind. Ct. App. October 2, 2007). A panel of this Court determined that although the trial court had erred by admitting Masterson's statement, the error was harmless, and Masterson's conviction should be affirmed. Memo op. at 7-8.

On January 26, 2009, Masterson filed a pro se petition for post-conviction relief. On July 11, 2011, Masterson amended his petition alleging ineffective assistance of trial and appellate counsel, who were the same attorney. Masterson argued that trial counsel was ineffective for failing to object during voir dire to the prosecutor's questioning of the prospective jurors regarding constructive possession and that appellate counsel was ineffective for failing to assert that the prosecutor's questioning was fundamental error.

On December 16, 2011, the post-conviction hearing was held. Masterson's attorney testified that he did not remember much about the case and that he did not recall the prosecutor discussing constructive possession during voir dire, but that he would have

5

objected to any improper questions. Masterson's attorney also testified that if he had not objected at trial, he would not have raised it as fundamental error on appeal. On August 2, 2012, the post-conviction court entered findings of fact and conclusions of law in its order denying post-conviction relief. Masterson now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

In post-conviction proceedings, the petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Helton v. State, 907 N.E.2d 1020, 1023 (Ind. 2009); see also Ind. Post-Conviction Rule 1(5). Because the post-conviction court denied relief, Masterson is appealing from a negative judgment and faces the rigorous burden of showing "that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the [post-conviction] court." Weatherford v. State, 619 N.E.2d 915, 917 (Ind. 1993).

When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984). Pinkins v. State, 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003). First, the petitioner must show that counsel's performance was deficient. Strickland, 466 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. Id. Second, the petitioner must show that the deficient performance resulted in prejudice. Id. To

6

establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so. Wentz v. State, 766 N.E.2d 351, 360 (Ind. 2002).

## II. Ineffective Assistance of Counsel

## A. Trial Counsel

Masterson argues that his trial counsel was ineffective when he failed to object to the prosecutor's discussion of possession during voir dire. More particularly, Masterson contends that his trial counsel should have objected because the prosecutor "conditioned the jury to be receptive to the State's position at trial" that Masterson was in possession of the gun. Appellant's Br. p. 10.

Before a trial counsel's failure to enter an objection may be regarded as ineffective representation, a petitioner must show that had the objection been made, the trial court would have sustained it. Oglesby v. State, 515 N.E.2d 1082, 1084 (Ind. 1987). Additionally, a petitioner must establish that that he suffered prejudice by his trial counsel's failure to properly object. Timberlake v. State, 690 N.E.2d 243, 259 (Ind. 1997).

Here, it was undisputed at trial that Masterson had a prior conviction disqualifying him from possessing a firearm and that firearms were found in the Mustang. Moreover,

7

Chico tracked Masterson's scent from the Mustang. See Masterson, memo op. at 8 (stating that any error in the admission of Masterson's statements regarding the hat were harmless error in light of other evidence, including that "Chico [had] tracked the men's scent from the Mustang to the garage"). Thus, under these circumstances, the prosecutor's examples had no probable persuasive impact on the jury, and Masterson has failed to show prejudice.

### B. Appellate Counsel

Masterson contends that his appellate counsel was ineffective for failing to argue that fundamental error occurred when the prosecutor gave examples of possession during voir dire that Masterson asserts were similar to the facts of his case. The same standard of review that applies to claims of ineffective assistance of trial counsel also applies to claims of ineffective assistance of appellate counsel. Burnside v. State, 858 N.E.2d 232, 238 (Ind. Ct. App. 2006).

Additionally, Indiana courts recognize three basic categories of ineffective assistance of appellate counsel: (1) denying access to an appeal; (2) failing to raise an issue on appeal; (3) and failing to present an issue completely and effectively. Bieghler v. State, 690 N.E.2d 188, 193-95 (Ind. 1997). In the instant case, Masterson is arguing that his appellate counsel was deficient for failing to raise an issue, and to prevail on this claim, Masterson must demonstrate that the unraised issue was significant, obvious, and "clearly stronger" than the issues that were raised. Id. at 194.

8

Here, in light of the fact that Masterson failed to show that he was prejudiced by his trial counsel's failure to object to the prosecutor's examples during voir dire, we cannot say that appellate counsel was ineffective for failing to argue that fundamental error occurred when trial counsel failed to object to these examples. Again, Masterson suffered no prejudice as a result of these examples. Put another way, error cannot be predicated on conduct that was not error in the first instance. Consequently, Masterson's claim of ineffective assistance of appellate counsel fails.

The judgment of the post-conviction court is affirmed.

MAY, J., and MATHIAS, J., concur.